**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STEVEN OBUCH,

        **Plaintiff,**                    **CIVIL ACTION NO. 11-14742**

   vs.

                                 **DISTRICT JUDGE PAUL D. BORMAN**

**COMMISSIONER OF**             **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION:**  This Court recommends that Plaintiff's motion for summary judgment (docket no. 10) should be denied, Defendant's motion for summary judgment (docket no. 11) should be granted, and Plaintiff's complaint be dismissed.

**II.  PROCEDURAL HISTORY:**

Plaintiff protectively filed an application for supplemental security income on June 26, 2009, alleging disability beginning January 15, 2000. (TR 147-49). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On March 11, 2011 Plaintiff appeared with counsel and testified at a hearing held before Administrative Law Judge (ALJ) Kathleen Eiler. (TR 57-75). Vocational Expert (VE) Susan Lyon also appeared and testified at the hearing. In a March 17, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because the evidence showed that there were a significant number of jobs existing in the national economy that he could perform. (TR 13-22). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial review. The parties filed

cross motions for summary judgment which are currently before the Court.

### III. PLAINTIFF'S TESTIMONY AND RECORD EVIDENCE

#### A. Plaintiff's Testimony

Plaintiff was forty-four years old at the time of his administrative hearing. He lives with his son in his own home but frequently stays with his girlfriend at her house. (TR 66). Plaintiff reports that he has a driver's license and he drives occasionally.

Plaintiff testified that he is not able to work because he has mobility issues, swelling of the knees, and numbness in both hands caused by carpal tunnel syndrome. (TR 62). He states that the carpal tunnel syndrome limits his ability to manipulate objects or pick up small items with his hands. Plaintiff testified that he uses a cane for ambulation. He reports that he takes Mobic and ten milligrams of methadone five times a day. He also states that he elevates his legs and uses a heating pad and ice to relieve discomfort. (TR 63). Plaintiff reports that he has difficulty concentrating and some drowsiness. He states that he often takes two naps a day for an hour at a time.

Plaintiff testified that he is only able to stand or sit for ten to fifteen minutes at a time before he experiences back, knee, ankle, and shoulder pain. (TR 64-65). He reports that his ankles swell when he stands and it may take two to three days for the swelling to subside. (TR 68). He estimated that he has two to three bad days each week where he is confined to bed all day. (TR 69). Plaintiff reports that he is limited to lifting five pounds. He claims that he does not do any household chores. Plaintiff testified that he spends the majority of his day watching television, except that he may read in ten to fifteen minute intervals. He stated in his Adult Function Report that he may read for a couple of hours per day. (TR 207).

#### B. Medical Evidence

The undersigned thoroughly reviewed Plaintiff's medical record and will summarize limited portions of the record below. The medical record reveals that Plaintiff has a history of carpal tunnel syndrome, osteoarthritis, fibromyalgia, and chronic pain. (TR 235-51, 256). There are varying reports throughout the record indicating both that Plaintiff does and does not have rheumatoid arthritis but no definitive report or medical test identifying this diagnosis.

Plaintiff treated with Dr. James Bash at West Branch Clinic from approximately April 22, 2008 through October 21, 2008 for complaints of knee pain and occasional neck pain. The records show that he was seen by Dr. Bash once per month mostly related to medication renewal for methadone to treat his complaints of knee pain. (TR 235-52). During the majority of these visits Dr. Bash documented that there was no obvious swelling in Plaintiff's extremities and his neck range of motion was good. (TR 239, 241, 243, 245, 251). On a few occasions Dr. Bash noted some swelling of the knee. (TR 245-46, 248). A medical note dated October 3, 2008 states "[d]ismiss patient per Dr. J. Bash. Ameritox results are inconsistent with the patients medication list." (TR 242). On October 21, 2008 Dr. Bash documented that Plaintiff was requesting a renewal of his methadone prescription and a letter stating that he has rheumatoid arthritis for his disability claim. Dr. Bash was unwilling to provide the letter without more documentation of rheumatoid arthritis. (TR 239-40). The doctor assessed Plaintiff with chronic knee pain and osteoarthritis and during the majority of visits simply renewed Plaintiff's prescription for methadone.

Plaintiff presented to Dr. Jonathan Rene on March 10, 2009 complaining that he had been diagnosed with rheumatoid arthritis. (TR 269-70). Dr. Rene found little evidence of rheumatoid arthritis but concluded that Plaintiff exhibited trigger point tenderness reminiscent of soft tissue rheumatism/fibromyalgia. Dr. Rene advised Plaintiff to engage in a low-impact exercise program

3

for reconditioning. He abstained from prescribing any pain medication.

On September 23, 2009 Plaintiff was seen and evaluated on behalf of the state disability determination service by Dr. R. Scott Lazzara of the Michigan Medical Consultants. (TR 254-58). Dr. Lazzara noted that Plaintiff appeared to be in mild discomfort, but otherwise cooperative with normal concentration, intact memory, and appropriate insight and judgment. (TR 257). Dr. Lazzara documented that Plaintiff's grip strength was intact, his dexterity was unimpaired, his motor strength and tone were normal, his range of motion of the joints was full, and his sensory was intact to light touch and pinprick. Dr. Lazzara observed that Plaintiff walked with a wide based, small-stepped, guarded gait and would benefit in the short term from the use of a cane for pain control and balance. The doctor observed that Plaintiff could pick up a coin, button clothing, and open a door, but he could not get on and off the examination table, heel and toe walk, squat, or hop due to pain. He observed that Plaintiff had intense knee pain with palpation possibly related to a crystal arthropathy. Dr. Lazzara concluded that Plaintiff was not able to do orthopedic maneuvers and should avoid squatting, stooping, bending, and operation of foot controls at least until he was remediated. In a neurologic and orthopedic supplemental report, boxes were checked indicating that Plaintiff could stand for less than five minutes, sit, bend, push, pull, squat, button clothes, tie shoes, pick up coins and pencils, make a fist, open doors, dial telephones, and write, among other things. (TR 254). Plaintiff's bilateral upper and lower extremity reflexes were determined to be normal, as was his seated straight leg raises. (TR 254-55). Plaintiff had full grip strength.

Plaintiff presented to Dr. Mohammed Zaman of the Pain Management Center at Bay Regional Medical Center on October 23, 2009 where he was diagnosed with fibromyalgia. (TR 263-68). Dr. Zaman noted that Plaintiff has received treatment for chronic pain from the pain clinic for

nine years.

The record contains two treatment notes from Dr. Gavin Awerbuch dated June 29, 2010 and October 6, 2010. (TR 279-83). During the June physical examination Dr. Awerbuch found that Plaintiff had some weakness of grip and sensory loss over the thumb and first two fingers consistent with bilateral carpal tunnel syndrome, a limited range of motion of the lower extremities with a swollen right knee, and a normal gait and ability to heel, toe, and tandem walk. He noted that a recent MRI of Plaintiff's knee was negative. During the October examination Dr. Awerbuch found that Plaintiff had a reduced lumbar range of motion, pain with internal and external movement of the right hip, proximal weakness, bilateral knee effusion and medial joint line effusion, and crepitations in the shoulder with positive impingement signs.

Dr. Awerbuch completed a Physical Residual Functional Capacity Questionnaire on March 7, 2011. Dr. Awerbuch indicated that he had treated Plaintiff five times over a period of seven months. (TR 271-75). He opined that Plaintiff suffered from fibromyalgia, rheumatoid arthritis, osteoarthritis, knee disorder, depression and anxiety. He further opined that Plaintiff's pain or other symptoms would constantly interfere with the degree of attention and concentration needed to perform even simple tasks. Dr. Awerbuch circled responses showing that Plaintiff could sit for thirty minutes at a time before needing to get up, stand fifteen minutes before needing to sit, walk one quarter of a city block, and sit/stand/walk less than two hours in an eight hour workday. Dr. Awerbuch also circled responses showing that Plaintiff would need to walk for two minutes every fifteen minutes during an eight hour workday. He recorded that Plaintiff would need to take fifteen minute rest breaks four times in an eight hour workday. He checked boxes stating that Plaintiff should rarely lift less than ten pounds, rarely look up or down, turn his head right or left, or hold his

head in a static position. Dr. Awerbuch checked boxes indicating that Plaintiff should rarely twist, stoop, crouch/squat, climb stairs, and should never climb ladders. He documented that Plaintiff should spend no more than ten percent of an eight hour workday grasping/turning/twisting with his hands, performing fine manipulation with his fingers, or reaching overhead with his arms. Dr. Awerbuch noted that Plaintiff did not need to use a cane or assistive device during occasional standing/walking, and he was capable of tolerating low stress jobs. Plaintiff continued to treat with Dr. Awerbuch into 2011. Many of the records from 2011 were submitted long after the ALJ issued her decision and thus were not considered in the ALJ's substantial evidence analysis. (TR 284-99, 311). It is the undersigned's opinion that these records do not constitute new evidence for purposes of a sentence six remand, therefore they were not summarized for this report.

**IV.    VOCATIONAL EXPERT TESTIMONY**

The VE testified that Plaintiff's past relevant employment consisted of unskilled work as a landscape laborer performed at a very heavy exertional level, unskilled work as a racker with a manufacturing company performed at a very heavy exertional level, skilled work as an excavator operator listed as medium exertional level but performed at a very heavy exertional level, and work as a video clerk performed at a light to medium exertional level. (TR 70-71).

The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past work experience who requires light work with the following limitations: (a) he requires a cane to ambulate and a sit-stand option every ten minutes; (b) limited to occasional bending, stooping, crouching, kneeling or crawling; (c) he can never climb ramps, stairs, or scaffolds; (d) he can never operate foot pedals with his bilateral lower extremities; and (e) he can only occasionally handle, finger or feel with his bilateral upper extremities. (TR 71-72). The

VE testified that the hypothetical individual could perform unskilled sedentary work as a surveillance system monitor, credit clerk, and certain general office clerk positions that could accommodate his upper extremity limitations, comprising 1,225 available jobs. (TR 72).

The ALJ added to the hypothetical that the individual would miss three days of work each month because of pain and medication side effects. The VE testified that this rate of absenteeism would be work preclusive and added that more than one unscheduled absence a month on a consistent basis would not be tolerated. The VE also testified that competitive employment would not be available if the individual would be off-task twenty percent or more of the time, and employment would be difficult to maintain if the individual needed to elevate his legs to seat level while on the job. (TR 73-74).

## V. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff has not engaged in substantial gainful activity since his application date of June 26, 2009, and suffers from the severe impairments of carpal tunnel syndrome, osteoarthritis, fibromyalgia, and chronic pain syndrome, he did not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 15-16).

The ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform sedentary work, except that he can occasionally handle, finger, and/or feel with his bilateral upper extremities; he requires use of a cane; he cannot operate foot pedals with his bilateral lower extremities; he requires the option to sit/stand every ten minutes; he can never climb ramps, stairs, ladders, ropes, or scaffolds; and he can occasionally balance, bend, stoop, crouch, kneel, or crawl. (TR 16-21). The ALJ concluded that because Plaintiff is not capable of performing his past relevant work, but could perform jobs that exist in significant numbers in the national economy, Plaintiff is

not under a disability as defined in the Social Security Act. (TR 21-22).

## VI. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B. Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.      Analysis**

Plaintiff argues that the ALJ failed to properly assess his complaints of pain, limitations, and fibromyalgia, and failed to give proper weight to the medical opinion of his treating physician, Dr. Gavin Awerbuch. The Court disagrees. Substantial evidence exists on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for sedentary work. At steps two and three of the five-step sequential analysis, the ALJ found Plaintiff had severe impairments including fibromyalgia and osteoarthritis but failed to meet or equal listing 14.09. In order to meet listing 14.09A, Plaintiff was required to provide evidence to show that he suffered from persistent inflammation or persistent deformity of either: (1) one or more major peripheral joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or (2) one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross

movements effectively (as defined in 14.00C7).

The ALJ found that Plaintiff's fibromyalgia and/or osteoarthritis did not meet or medically equal listing 14.09A because Plaintiff could ambulate effectively without assistive devices and he could perform fine and gross movements effectively. Plaintiff maintains that the ALJ erred in this conclusion. Yet despite Plaintiff's contention, the ALJ's opinion demonstrates that she considered the entire record and noted throughout the opinion evidence showing that Plaintiff's gait was normal, he did not require a cane or other assistive device when engaged in occasional standing and walking, although he may benefit from short term use of a cane until he was remediated, he had full range of motion of the joints with intact strength and unimpaired dexterity, he had the ability to heel, toe, and tandem walk, and he could perform activities of daily living. Although certainly there is evidence to support Plaintiff's argument that he used a cane to ambulate, there is substantial evidence of record to support the ALJ's decision.

The ALJ also discussed record evidence supporting her conclusion that Plaintiff was able to perform fine and gross upper extremity movements, including that he could pick up a coin, button clothing, open a door, dial a telephone, and smoke. The record provides further support for the ALJ's conclusion because it contains evidence to show that Plaintiff cared for the majority of his personal needs, made coffee, prepared his meals using a microwave oven, shopped for food and household supplies, drove, and paid bills. (TR 203-10).

In addition to the above, the ALJ concluded that Plaintiff's fibromyalgia and/or osteoarthritis did not meet listing 14.09B, C, or D because there was no evidence that other body systems were impaired by these conditions, no evidence of ankylosing spondylitis or other spondyloarthropathies, and no evidence that Plaintiff suffered repeated manifestations with at least two of the constitutional

symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: 1. Limitation of activities of daily living; 2. Limitation in maintaining social functioning; 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.  Plaintiff did not challenge the ALJ's conclusion with respect to listing 14.09B, C, or D, and there is no basis for disturbing the ALJ's finding.

Plaintiff next argues that the ALJ failed to properly assess Plaintiff's complaints of pain and limitations.  The ALJ's conclusions regarding credibility should be accorded deference and should not be discarded lightly because the ALJ has the opportunity to observe the demeanor of the witness. *See Casey v. Sec'y of Health & Human Servs,* 987 F.2d 1230 (6th Cir. 1993).

A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.  In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true.  When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34485-86 (1996).  The assessment must be based on a consideration of all of the evidence in the case record, including

> Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms

  affect the individual's ability to work.

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. at 34486.

  Here, the ALJ carefully reviewed the evidence and found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. The ALJ discussed specific instances in which the claimant's allegations were inconsistent with the medical record. The ALJ noted that Plaintiff was not entirely truthful with his doctors when it came to disclosing what pain medications he was taking and when those medications were prescribed to him. (TR 20). The ALJ noted that despite Plaintiff's allegations of debilitating effects, his medical treatment was routine and conservative, consisting primarily of medication prescription and renewal. The ALJ also noted that Plaintiff informed Dr. Awerbuch that his prescription medications afforded him positive relief from his symptoms. The ALJ's basis for finding that Plaintiff was not entirely credible was well-grounded in the record and the ALJ articulated reasons for such a finding by citing specific examples in the decision. The ALJ's credibility assessment should not be disturbed.

  Next, Plaintiff argues that the ALJ's RFC is contrary to the physical assessment prepared by Plaintiff's treating physician Dr. Awerbuch. It is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2).

  The ALJ evaluated Dr. Awerbuch's opinions, acknowledged his treating relationship with Plaintiff, and attributed varying weight to the different conclusions drawn by the doctor. The ALJ gave no weight to that portion of Dr. Awerbuch's Physical Residual Functional Capacity

Questionnaire that indicates that Plaintiff experiences anxiety and depression. In discounting this portion of Dr. Awerbuch's Physical RFC, the ALJ noted that Dr. Awerbuch was not a mental health specialist and there was no evidence in the record showing that Plaintiff received mental health treatment. (TR 19).

The ALJ attributed some weight to that portion of Dr. Awerbuch's Physical RFC that states that Plaintiff could walk one quarter of a block, sit for thirty minutes, and stand for fifteen minutes at a time. In fact, the ALJ took this limitation into consideration and incorporated it into the RFC in the form of a sit-stand option. As for Dr. Awerbuch's finding that Plaintiff does not require a cane to ambulate, the ALJ attributed some weight to that assessment, but actually went beyond it to incorporate a more restrictive limitation in the RFC requiring Plaintiff to be able to use a cane to ambulate. The ALJ indicated that she afforded little to no weight to Dr. Awerbuch's assessment that Plaintiff could rarely look up or down, turn his head right or left, or hold his head static because there were no objective results or medical testing in the record to substantiate these limitations.

Next, the ALJ attributed some weight to Dr. Awerbuch's restrictions on twisting, lifting, stooping, bending, crouching, squatting, or climbing stairs and ladders. Indeed, the ALJ incorporated into the RFC limitations that Plaintiff can never climb ramps, stairs, ladders, ropes, or scaffolds, and can only occasionally balance, bend, stoop, crouch, kneel, or crawl. Finally, the ALJ stated that she attributed little weight to Dr. Awerbuch's conclusion that Plaintiff was limited to using his hands, fingers, and arms only ten percent of an eight hour workday. In assessing only little weight to this portion of the Physical RFC, the ALJ discussed evidence that showed that Plaintiff could button clothing, pick up coins, had full range of motion of the elbows and wrists, could make 100% fist formation with good grip, and was noted to be neurovascularly intact in the upper

extremities with full strength equally and bilaterally.

The ALJ reviewed the evidence of record and made findings that were supported by substantial evidence in the record. It is not within the Court's authority to reverse ALJ findings when they are supported by substantial evidence in the record simply because record evidence also exists to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (discussing the " 'zone of choice' within which the Commissioner can act, without the fear of court interference."). The undersigned has considered the parties' arguments in total and finds that the ALJ gave proper consideration to Dr. Awerbuch's opinion and provided good reasons for the weight she afforded to different portions of his opinion. She crafted an RFC that is supported by substantial evidence and took into consideration Plaintiff's credible limitations. Plaintiff's motion for summary judgment should be denied and Defendant's cross motion granted.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection

must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 9, 2013          s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 9, 2013          s/ Lisa C. Bartlett
                                Case Manager

15